NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARIA TORRES NAZARIO,

*Plaintiff,*

v.

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

*Defendant.*

Civil Action No. 16-5483

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Maria Torres Nazario's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g) of Administrative Law Judge Richard West's (the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). For the reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED.**

**I.   APPLICABLE LAW**

   **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial

1

evidence consists of "more than a mere scintilla" of evidence, but "need not rise to the level of a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Halter, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013) (quoting Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973)).

### B. Five-Step Sequential Analysis

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry

ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See 20 C.F.R. § 404.1520(a)(4)(ii).

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" to perform his past relevant work. If the answer is yes, then the claim for benefits must be denied. Id. At the fifth and final step, if the claimant is unable to engage in past relevant work, the Commissioner must ask "whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and 'residual functional capacity.'" Id.; 20 C.F.R. §§ 404.1520(a)(4)(iii) to (v). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for Disability Benefits on September 12, 2012. Administrative Transcript ("Tr.") at 60, 71. Plaintiff alleged that her disability resulted from physical and

psychological impairments and listed an onset date of January 1, 1999. Tr. 60-61. Plaintiff's claim was initially denied in January 2013 and again on reconsideration in April 2013. Tr. 71-97. After a hearing, the ALJ issued a decision concluding that Plaintiff is not disabled within the meaning of the Social Security Act. Tr. 18-29. The ALJ found that Plaintiff is afflicted with multiple "severe impairments," but that no such impairment or combination of impairments "meets or medically equals the severity" required to amount to a per se disability as set forth in the relevant regulations. Tr. 20-23. The ALJ ultimately concluded that Plaintiff has the residual functional capacity to perform sedentary work with some limitations. Tr. 23-28. The Appeals Council subsequently denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now appeals that decision.

**B. General Background**

Plaintiff is a 41-year-old woman. Tr. 41. She alleges that she has been disabled since January 1, 1999 and that her disability is caused by anxiety, depression, arthritis of the lower back, thyroid disease, blood clot, lupus, migraines, high blood pressure, insomnia, hypertension, panic attacks, and allergies. Tr. 60-61.

Plaintiff's work history is brief. The record indicates that she previously worked as a babysitter from March 2009 to December 2009 and as an aircraft cleaner from August 1997 to June 1998. Tr. 81-82, 206. At the administrative hearing, Plaintiff testified that she "couldn't handle" the babysitting job and that she was unable to do that type of work or any other work. Tr. 43. Plaintiff has not worked since 2009. Tr. 41. She obtained a Bachelor's Degree in 2011. Tr. 205. At the hearing, Plaintiff estimated that it took her between five and five-and-one-half years to complete the degree. Tr. 41. She testified that she pursued the degree online because she "couldn't cope" with the live classroom environment. Tr. 41.

Plaintiff indicated in her application paperwork that she resided in an apartment with her two children. Tr. 214. She testified that she raised her children independently. Tr. 54. At the time of the hearing, both children were school-age. Tr. 54. Plaintiff reported in her application paperwork that her daily routine involved watching television, listening to music, caring for herself and her children, and preparing meals. Tr. 214. She advised that she was able to perform housework, including cleaning, laundry, and ironing. Tr. 216. Plaintiff also described some limitations that resulted from her medical conditions. She advised that she does not shop alone "because of [her] anxiety." Tr. 53. She also cannot drive because she failed her driving test "due to . . . panic and anxiety attacks." Tr. 217.

### C. Medical History[1]

Plaintiff's medical records indicate the following relevant diagnoses: degenerative disc disease, hypothyroidism, obesity, lupus, hypertension, arthritis, migraines, depression, and anxiety.

The records reflecting the diagnoses of her physical conditions are summarized as follows. In January 2012, Jon Sicat, D.O. diagnosed Plaintiff with mild degenerative disc disease based on an x-ray of her back. Tr. 985. On November 8, 2012, Plaintiff underwent a routine physical and was diagnosed with hypothyroidism, lumbago, and obesity. Tr. 445. The treating physician noted that Plaintiff had previously been diagnosed with lupus and hypertension. Tr. 445. On December 19, 2012, Plaintiff was evaluated by Rahel Eyassu, M.D., a State agency consultant. Tr. 972. Plaintiff reported a history of hypertension, arthritis of the lower back and right knee, hypothyroidism, migraines, depression, and anxiety. Tr. 972. Dr. Eyassu indicated that Plaintiff's

---

[1] The administrative record contains voluminous medical records. Many of the records do not appear to be directly related to the conditions Plaintiff alleges give rise to her disability. Because Plaintiff does not address these seemingly irrelevant records in her briefing, they are not addressed herein.

5

"only notable" medical history involved her C-sections. Tr. 972. Dr. Eyassu articulated the following diagnoses: (1) chronic low back pain; (2) probable right knee arthritis; (3) migraine headache without aura; (4) hypothyroidism; (5) depression; and (6) anxiety. Tr. 973-74. Dr. Eyassu noted that Plaintiff had "some limitation on bending, squatting, kneeling, and prolonged stair climbing" and recommended that she avoid heavy lifting. Tr. 974.

The records pertaining to Plaintiff's mental health treatment provide the following information. Plaintiff began outpatient mental health treatment at Mount Carmel Guild in February 2012. Tr. 1036. Carla Hammond, M.D. prepared an assessment report, which notes that Plaintiff reported her depression began in the 1990s following the death of her newborn son. Tr. 1036. Plaintiff noted that she subsequently suffered the loss of two other children. Tr. 1038. Plaintiff informed Dr. Hammond that she received outpatient treatment for depression in 1997, 2008-2009, and 2012. Tr. 1037. She reported a history of physical and sexual abuse, self-harm, and a few instances of drug use. Tr. 1036, 1038, 1039, 1041. Dr. Hammond diagnosed Plaintiff with Major Depressive Disorder and assessed her with an initial Global Assessment of Functioning ("GAF") score of 55.[2] Tr. 1042. In January 2013, Dr. Hammond indicated that Plaintiff was "doing well on her psychiatric regimen" and was compliant with her medication and treatment schedule. Tr. 1033. Dr. Hammond elevated Plaintiff's GAF score to a 65. Tr. 1033. On June 24, 2013, Dr. Hammond completed a residual functional capacity questionnaire. Tr. 1024. She noted that Plaintiff "ha[d] responded well to treatment" and that her "symptoms of anxiety and depression ha[d] persisted but to [a] lesser extent." Tr. 1025. Dr. Hammond completed a check-box form to assess Plaintiff's ability to perform "unskilled work." Tr. 1027. She assessed

---

[2] "A GAF score is a 'numerical summary of a clinician's judgment of [an] individual's overall level of functioning.'" Rivera v. Astrue, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) (quoting American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). A score of 51 through 60 "indicates moderate symptoms." Id. The GAF scale has been replaced with a new measurement system in the DSM-V.

6

Plaintiff's abilities as "limited but satisfactory" in six categories, and "seriously limited, but not precluded" in thirteen categories. Tr. 1027-28. Dr. Hammond concluded that Plaintiff was "unable to meet competitive standards" with respect to the remaining five abilities: (1) to complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) to get along with co-workers without unduly distracting them or exhibiting behavioral extremes; (3) to respond appropriately to changes in a routine work setting; (4) to understand and remember detailed instructions; and (5) to carry out detailed instructions. Tr. 1027-28. Dr. Hammond assessed Plaintiff's ability to adhere to basic standards of neatness or cleanliness as "unlimited or very good." Tr. 1028. Dr. Hammond anticipated that Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. Tr. 1029.

In December 2012, Plaintiff was examined by Steven Yalkowsky, Ph.D., a State agency consultant. Tr. 968-71. Dr. Yalkowsky's report is consistent with Dr. Hammond's description of the circumstances surrounding the onset of Plaintiff's psychological symptoms. Tr. 968. Plaintiff reported that she was unable to work because of her anxiety, back problems, and tendency to "'snap' for no reason." Tr. 968. She reported that she does not shop alone and "rarely cooks." Tr. 969. She noted that she does laundry and performs other tasks to keep her apartment "neat and clean." Tr. 969. Dr. Yalkowsky's mental status evaluation of Plaintiff indicated "no observation of abnormal thought content." Tr. 969. He noted a history of suicidal thoughts and self-injurious behavior. Tr. 969. Dr. Yalkowsky assessed Plaintiff's cognitive function as "at least average" and noted "logical, coherent and goal directed" thought processes. Tr. 969-70. Dr. Yalkowsky diagnosed Plaintiff with depression with psychotic features and anxiety disorder with panic attacks. Tr. 970. He assessed her with a GAF score of 55. Tr. 970.

On June 19, 2014, Mount Carmel Guild – the facility where Plaintiff received mental health

7

treatment – completed an updated residual functional capacity questionnaire. Tr. 1045-50. The questionnaire was completed by Advanced Practice Nurse Olayinka Aramide. Tr. 1045-50. The assessment noted that Plaintiff demonstrated a depressed mood, poor frustration tolerance, lack of motivation, fair impulse control, anxiety, and panic attacks. Tr. 1046. Plaintiff reported having two or three panic attacks per week. Tr. 1047. The nurse assessed Plaintiff's abilities and aptitudes as "limited but satisfactory" in eleven categories, and as "seriously limited, but not precluded" in ten categories. Tr. 1048-49. Plaintiff was assessed as "unable to meet competitive standards" with respect to the remaining three abilities: (1) to complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) to understand and remember detailed instructions; and (3) to carry out detailed instructions. Tr. 1048-49. Plaintiff was again assessed with an "unlimited or very good" ability to adhere to basic standards of neatness and cleanliness. Tr. 1049. Nurse Aramide anticipated that Plaintiff's impairments or treatment would cause her to miss work more than four days per month. Tr. 1050.

Joseph Bencivenne, Ph.D., an Agency doctor, opined that Plaintiff was not disabled after he reviewed her medical records. Tr. 70. He noted several areas in which Plaintiff's records indicated mild to moderate limitations in her ability to work. Tr. 64-69. Taking into account these limitations, Dr. Bencivenne concluded that Plaintiff was "capable of understanding instructions and maintaining pace and persistence in simple, routine, low contact work." Tr. 69. On Plaintiff's application for reconsideration, Dr. Robert Campion, M.D. concurred with Dr. Bencivenne's conclusions. Tr. 89-96.

Plaintiff testified before the ALJ on June 25, 2014. Tr. 35. Consistent with her mental health treatment records, she testified that she first became depressed in 1996 following the death of her son. Tr. 46. She advised that her depression leaves her unable to concentrate. Tr. 47. She

testified that her anxiety manifests on a daily basis, and that a panic attack can be triggered by "anything," such as "spill[ing] something," her kids "jumping up and down," or "somebody[] telling [her] something." Tr. 48. She indicated that her anxiety affects her ability to work with other people because it causes her to "snap." Tr. 49. She testified that her most recent instance of self-harm occurred approximately one month before the hearing. Tr. 50. As for her physical symptoms, she testified that her lupus affects her life by causing muscle aches and stiffness. Tr. 49. She also testified that her back pain leaves her "hardly" able to sit and stand for periods of time. Tr. 50.

Plaintiff's medical records indicate that she has been prescribed a variety of medications to treat her conditions. See, e.g., Tr. 964, 1025, 1031. At the hearing, Plaintiff testified that she has experienced side effects including headaches, nausea, vomiting, dizziness, and shaking. Tr. 46. The "Mental Residual Functional Capacity Questionnaire" completed by Dr. Hammond on June 24, 2013 contains an inquiry regarding "any side effects of medications that may have implications for working." Tr. 1025. In response, Dr. Hammond noted, "Denied." Tr. 1025. Dr. Yalkowsky's evaluation dated December 17, 2012 indicates that Plaintiff reported experiencing nausea as a side effect. Tr. 968.

### D. Vocational Expert

At the administrative hearing, the ALJ signaled his intention to consult with a vocational expert. Tr. 56-57. On November 10, 2014, the ALJ sent a post-hearing interrogatory request to the vocational expert. Tr. 262. The request included the following hypothetical:

> Assume a hypothetical individual who was born on January 25, 1977, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416[.]964, and has work experience [as a babysitter and an airplane cleaner] . . . [.] Assume further that this individual has the residual functional capacity (RFC) to perform sedentary work as defined in

9

> 20 CFR 404.1567(a) and 416.967(a) except: She cannot climb ladders, ropes or scaffolds, and can perform other postural functions occasionally[;] She can understand, remember and carry out simple instructions; She can have occasional interaction with coworkers, supervisors and the general public; and [s]he can handle changes to essential job functions on an occasional basis.

Tr. 265. The expert opined that the hypothetical individual could perform the following three jobs: "Table worker," of which there are 100,000 positions in the national economy, "Document Prep Worker," of which there are 200,000 positions in the national economy, and "Scale Operator," of which there are 75,000 positions in the national economy. Tr. 266.

A subsequent question posed the same hypothetical with the additional limitation that the individual "can perform work-related activities no more than six hours in a normal eight-hour workday." Tr. 267. The expert opined that this hypothetical individual could not perform any unskilled occupations that exist in the national economy. Tr. 268. He noted that "[w]orking only 6 hours per day would preclude all work." Tr. 268.

Another subsequent question posed the same hypothetical, removing the limitation that the individual can work no more than six hours in an eight-hour work day, and adding the limitation that "[s]he would require a minimum of two absences per month." Tr. 269. The expert again concluded that the individual could not perform any unskilled occupations that exist in the national economy and noted that "absence of 2 days per month would preclude all work." Tr. 270.

### E. ALJ Decision

On December 8, 2014, the ALJ issued a decision in which he concluded that Plaintiff was not disabled. The ALJ first determined that Plaintiff's date of last insured is June 30, 2000. Tr. 20. The ALJ then turned to the five-step process. At step one, he concluded that Plaintiff has not engaged in "substantial gainful activity" since the alleged onset date. Tr. 20. At step two, he determined that Plaintiff has degenerative disc disease, right knee arthritis, lupus, hypothyroidism,

10

obesity, depression, and migraines, all of which are "severe impairments." Tr. 20. At step three, the ALJ found that none of the impairments individually or collectively met or medically equaled the severity of a listed impairment. Tr. 21-23. At step four, the ALJ found that Plaintiff has the "residual functional capacity" to perform sedentary work, subject to some specific limitations. Tr. 23. The ALJ found that Plaintiff cannot climb ladders, ropes, or scaffolds. Tr. 23. He concluded that she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, can understand, remember, and carry out simple instructions, can have occasional interaction with co-workers, supervisors, and the general public, and can handle occasional changes to essential job functions. Tr. 23.

Accordingly, the ALJ made the following determinations. Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but Plaintiff's representations "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because they are inconsistent with her medical records and with her "assertions regarding her activities of daily living." Tr. 25. In addressing Plaintiff's spinal condition, the ALJ specifically noted Plaintiff's testimony that she is able to care for her children, cook, and perform various household chores. Tr. 26. Based on the records pertaining to her other physical impairments, the ALJ concluded that, although Plaintiff "might have difficulty standing and walking for prolonged periods[,] . . . there is no evidence that she cannot perform the demands of sedentary work that involve standing and walking up to two hours and sitting up to six hours during the course of an eight hour day." Tr. 26. Upon review of Plaintiff's psychological evaluations, the ALJ concluded that Plaintiff "could perform simple tasks in a low contact environment involving no more than occasional interaction with supervisors, co-workers or members of the public." Tr. 27. In reaching this conclusion, the ALJ expressly considered the evaluations

11

performed by consultative psychologist Dr. Yalkowsky and by Plaintiff's treating psychiatrist, Dr. Hammond. Tr. 27. He expressly noted his consideration of Dr. Hammond's opinion that Plaintiff would be "unable to sustain" the work of which she is capable. Tr. 27. He afforded these opinions "some weight, but not great weight" because he found "no medical evidence consistent with the proposition that the claimant would not be able to sustain work at the restricted residual functional capacity identified above, including low contact." Tr. 27.

The ALJ made the following additional findings: (1) Plaintiff is not able to perform any past relevant work; (2) Plaintiff was a "younger individual" as defined by the Social Security Act on the alleged disability onset date; (3) Plaintiff has a "limited education" and can communicate in English; (4) there is no evidence that Plaintiff has skills that would be transferable to other work within her residual functional capacity; (5) there are a significant number of jobs in the national economy that Plaintiff is capable of performing. Tr. 28. The ALJ relied on the vocational expert's opinion to conclude that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and is therefore not disabled. Tr. 29.

### III.   ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed for the following reasons: (1) the ALJ erred "by providing no ascertainable weight" to critical portions of Dr. Hammond's assessment; (2) the ALJ misevaluated Plaintiff's symptomology and credibility; (3) the vocational testimony is based on a "factually and legally deficient hypothetical," which fails to amount to substantial evidence; (4) the ALJ erred by failing to evaluate the cumulative effects of Plaintiff's impairments; (5) the ALJ failed to develop the record for a Plaintiff who lacked counsel at the hearing. For the reasons explained below, none of these arguments warrant reversal.

### A. Weight Afforded to Dr. Hammond's Assessment

Plaintiff argues that the ALJ's failure to "expressly mention" portions of Dr. Hammond's Mental Residual Functional Capacity Evaluation warrants reversal. Reports generated by treating physicians should generally be afforded great weight. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). However, an ALJ "may assign a treating physician's opinion more or less weight depending upon the extent to which the physician's assessment is supported by the record." Colvin v. Comm'r of Soc. Sec., 675 F. App'x 154, 157 (3d Cir. 2017) (citing Plummer, 186 F.3d at 429). It is well-established that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011). Moreover, the type of medical evaluation form is also relevant to the ALJ's credibility determination. The Third Circuit has determined that check-box medical evaluation forms are "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). In cases involving voluminous medical records, there is no expectation that the ALJ "make reference to every relevant treatment note." Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001).

Plaintiff takes issue with the ALJ's treatment of Dr. Hammond's Mental Residual Functional Capacity Evaluation dated June 24, 2013. Pl.'s Br. at 21. Plaintiff argues that the portions at issue, if credited, would establish Plaintiff's disability. Pl.'s Br. at 21. Plaintiff emphasizes that Dr. Hammond concluded she is "unable to meet competitive standards" with respect to her abilities to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," to "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavior extremes," and to "[r]espond appropriately to changes in a routine work setting." Pl.'s Br. at 22. Plaintiff also notes that Dr. Hammond found that her impairments and/or treatment would cause her to be absent from work more than four days per

month. Pl.'s Br. at 22.

The form at issue is a check-box evaluation. The Third Circuit has found that such "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason, 994 F.2d at 1065. In his opinion, the ALJ acknowledged that some of Dr. Hammond's findings were inconsistent with the ALJ's conclusion. Tr. 27. The ALJ explained that he afforded those opinions "some weight, but not great weight" upon a finding that "there is no medical evidence consistent with the proposition that the claimant would not be able to sustain work at the restricted residual functional capacity" the ALJ identified in his decision. Tr. 27. The ALJ also considered the findings of Dr. Yalkowsky, which he deemed "consistent with sedentary work with postural and mental limitation," as well as the State Agency consultants' conclusions that Plaintiff was not disabled. Tr. 27. Therefore, this Court disagrees with Plaintiff's contention that the ALJ failed to consider the assessment of her treating psychiatrist. Rather, the record supports the conclusion that the ALJ considered the limitations alleged in Dr. Hammond's assessment, but found the alleged limitations to be inconsistent with the medical evidence contained in the record.

### B. Plaintiff's Credibility

Plaintiff submits that the ALJ improperly evaluated Plaintiff's credibility. Under the substantial evidence standard, an ALJ's credibility determinations are entitled to "great deference" where they are based upon an assessment of the witness's demeanor. Atl. Limousine, Inc. v. N.L.R.B., 243 F.3d 711, 718 (3d Cir. 2001).

Plaintiff first argues that the ALJ improperly "minimized [Plaintiff's] impairment in concentration, persistence, and pace as only 'moderate' by noting that she completed a college degree." Pl.'s Br. at 30. This Court disagrees. The ALJ's opinion reflects consideration of

14

Plaintiff's cognitive limitations. He found that Plaintiff "may have problems performing complex tasks due to her mental impairments," but further found a lack of evidence "that she cannot perform the simple rote tasks of unskilled work." Tr. 22. In concluding that Plaintiff is capable of performing unskilled work, the ALJ relied not only on Plaintiff's completion of a college degree, but also on the psychological assessments in the record. Accordingly, the ALJ's conclusion is supported by substantial evidence in this regard.

Plaintiff also submits that the ALJ's decision should be reversed for failure to consider the side-effects of her medications. Yet, the only evidence Plaintiff cites regarding her medications' side effects is her hearing testimony. See Pl.'s Br. at 31. The remainder of the record contains evidence that contradicts Plaintiff's testimony about her side effects. Dr. Hammond's assessment denies the existence of any side effects that could affect Plaintiff's ability to work. See Tr. 1025. Plaintiff submits that the ALJ "relied on a legally deficient 'boilerplate credibility template.'" Pl.'s Br. at 31. In assessing Plaintiff's credibility, the ALJ provided a detailed summary of Plaintiff's testimony and individually evaluated the symptoms she alleged to result from each impairment. Tr. 25-27. This Court is satisfied that the ALJ's credibility determination of Plaintiff's testimony is supported by substantial evidence.

### C. Vocational Expert

Plaintiff next argues that the vocational expert's opinions were not supported by substantial evidence. Specifically, he argues that ALJ excluded "undisputed moderate restrictions" pertaining to concentration, persistence or pace from the hypothetical questions he posed to the expert.

"Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Usually, the ALJ

will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy. Id. The hypothetical must "accurately portray" any impairments of the claimant. Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014). To accurately portray a claimant's impairments, the ALJ must include all "credibly established limitations" in the hypothetical. Id. (citing Plummer, 186 F.3d at 431). However, failure to include an established limitation does not automatically warrant a remand. See Holley v. Comm'r of Soc. Sec., 590 F. App'x 167, 168-69 (3d Cir. 2014) (declining to remand where vocational expert hypothetical failed to include "moderate difficulties in concentration, persistence and pace").

In Holley, the ALJ similarly noted that the plaintiff had "moderate difficulties in the areas of concentration, persistence and pace." Id. at 168. The hypothetical presented to the vocational expert in Holley did not explicitly note those limitations. Id. The Third Circuit declined to remand the matter upon consideration of "the substance of [the ALJ's] overall review." Id. The panel found that the ALJ's opinion demonstrated "a sound knowledge of the record." Id. In that case, the ALJ cited the plaintiff's abilities to independently complete "activities of daily living," to "complete[] structured tasks of short duration," to "sustain concentration," and to "remain alert, oriented and compliant" during an examination. Id. at 169.

Here, the ALJ's opinion acknowledged that Plaintiff has "moderate difficulties" with "concentration, persistence or pace." Tr. 22. The ALJ further found that, in light of Plaintiff's ability to obtain a college degree online, "there is no evidence that she cannot perform the simple rote tasks of unskilled work." Tr. 22. The ALJ further cited Plaintiff's ability to "perform simple calculations and serial 3's without limitation" during a medical evaluation and credited the opinions of Agency medical consultants indicating that Plaintiff "could perform simple tasks of

unskilled work." Tr. 22. This Court is satisfied that the ALJ's review demonstrated a "sound knowledge of the record." The aforementioned evidence cited by the ALJ constitutes substantial evidence to support the conclusion that Plaintiff is able to perform the jobs cited by the vocational expert.

### D. Cumulative Effect of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider the cumulative effect of all of Plaintiff's impairments. Plaintiff's argument is contradicted by the record. The ALJ's opinion repeatedly considers whether any of the claimant's "impairment[s] or combination of impairments" give rise to a disability. See Tr. 19, 21. Moreover, the ALJ expressly acknowledged, on multiple occasions, his consideration of the cumulative effect of certain impairments. For example, the ALJ noted that he "fully considered [Plaintiff's] obesity in the context of the overall record evidence" in reaching his decision. Tr. 21. The ALJ also indicated that he considered Plaintiff's psychological impairments "singly and in combination." Tr. 21. Finally, the ALJ noted that he considered Plaintiff's "degenerative disc disease and probable knee arthritis, coupled with her obesity" in reaching the conclusion that Plaintiff "might have difficulty standing and walking for prolonged periods." Tr. 26. Accordingly, the ALJ's decision reflects sufficient consideration of the cumulative impact of Plaintiff's impairments.

### E. ALJ's Duty to Develop the Record

Finally, Plaintiff argues that the ALJ "failed to discharge his heightened duty to develop the record fully and fairly for a mentally impaired claimant" who appeared without counsel at the hearing. Pl.'s Br. at 39.

An ALJ owes a duty to a pro se plaintiff to assist in developing the administrative record. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). While an ALJ need not "search out all the

relevant evidence which might be available," Hess v. Sec'y of Health, Educ. & Welfare, 497 F.2d 837, 840 (3d Cir. 1974), he must "assume a more active role when the claimant is unrepresented." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Plaintiff was represented by counsel in connection with this matter. Counsel did not appear at the administrative hearing, but sent a "Senior Intern" to perform Plaintiff's direct examination. Following the hearing, the ALJ wrote to counsel of record regarding the vocational expert's opinion and invited counsel to supplement the record with "written comments," "a written statement," and "any additional records . . . including a report from the treating physician" that would be pertinent to the vocational opinion. Tr. 272. The ALJ also invited counsel to submit questions for the vocational expert or to request a supplemental hearing. Tr. 272. According to the ALJ's decision, counsel did not respond. Tr. 18.

As a preliminary matter, Plaintiff has failed to establish that the heightened duty applies in this case, as she was represented by counsel and accompanied to the hearing by a legal representative. Prior to the hearing, counsel had submitted hundreds of pages of medical records in support of Plaintiff's claim. Accordingly, the record contained a sufficient amount of evidence to allow the ALJ to draw a well-informed conclusion. Moreover, the ALJ's post-hearing correspondence to counsel of record offering an opportunity to supplement the record defeats Plaintiff's argument that he failed to develop the record.

**IV.  CONCLUSION**

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED.** An appropriate order will follow.

Date: October 31, 2018    /s/ *Madeline Cox Arleo*          .
　　　　　　　　　　　　　　　　　　**Hon. Madeline Cox Arleo**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**